JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

11 CIV 2323

AMY GAITANE and MAHASTI
KOOSHA, individually and on behalf of a
class of similarly-situated female
employees,

                        Plaintiffs,

     v.

EATON CORPORATION, ALFRED
VINCENZI, PATRICK FERRANG, and
RONALD QUADE,

                  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Civ. No. _____

RECEIVED
APR 05 2011
U.S.D.C. S.D.N.Y.
CASHIERS

       Plaintiffs Amy Gaitane and Mahasti Koosha ("Plaintiffs," "Named Plaintiffs," or "Class

Representatives"), by and through their attorneys Sanford Wittels & Heisler, LLP, bring this

action in their individual capacities and on behalf of a class of women defined below against

Eaton Corporation ("Eaton" or the "Company"), and its managers Alfred "Al" Vincenzi, Patrick

"Pat" Ferrang, and Ronald "Ron" Quade (collectively "Defendants"). Plaintiffs Gaitane and

Koosha allege upon knowledge as to themselves and their own acts, and otherwise upon

information and belief, as follows:

I.     **OVERVIEW OF CLASS-WIDE GENDER DISCRIMINATION AT EATON**

1.     This year, Eaton celebrates its 100th anniversary and, as the Company's website proudly proclaims, "a 100-year heritage of innovation." What the website studiously avoids mentioning is Eaton's 100-year heritage of sexism. For all its talk about innovation, Eaton remains in the dark ages when it comes to gender equality. Across Eaton's five male-dominated businesses: Aerospace, Automotive, Electrical, Hydraulics, and Truck, Eaton's largely engineering workforce resembles a workforce of decades past – a place for men only.

2.     Engineering is a notoriously unfriendly environment for women. A recent study found that nearly a third of women surveyed left the engineering field because of the male-centric organizational culture,[1] as the following quotes illustrate:

- "There isn't a strong network of females in engineering. You either need to learn to be 'one of the guys' or blaze the trail yourself, which is very difficult."[2]

- "[There is no] opportunity for advancement in a male-dominated field – the culture of engineering is male-centric…"[3]

- "There's still a bit of a 'boys club' mentality around, even with younger engineers and non-engineer women. Some older male engineers certainly think that females shouldn't be engineers, or that it's 'cute' when they are, like it's an amusing phase she's going through, instead of a career…"[4]

3.     In a male-dominated industry where women are woefully underrepresented,[5] one

---

[1] Nadya A. Fouad and Romila Singh, STEMMING THE TIDE: WHY WOMEN LEAVE ENGINEERING 27 (University of Wisconsin-Milwaukee 2011), available at http://www.studyofwork.com/wp-content/uploads/2011/03/Full-report-of-Women-in-Engineering.pdf (last visited Mar. 30, 2011).
[2] Id. at 23.
[3] Id.
[4] Id. at 35.
[5] Molly Madden, "Colleges address engineering gender gap," THE NEWS-SENTINEL, available at http://www.news-sentinel.com/apps/pbcs.dll/article?AID=/20100927/BUSINESS/9270330 (last visited Mar. 29, 2011).

would expect Eaton to strive to retain and promote its high performing female engineers. Instead, Eaton marginalizes them, undermines them, and pushes them out of the Company. For many talented and hard-working women engineers, the battle for gender equality is lost on the killing fields of Eaton.

4.      Women are conspicuously absent from Eaton's leadership ranks.  Of the Company's 28 Corporate Officers, 26 – or a whopping 93 percent – are men.  Similarly, Eaton's Board of Directors is more than 90 percent male.

5.      Although Alexander M. Cutler, Chairman and CEO of Eaton, leads the Company alongside an all-male team, he boasts: "At Eaton, we know that doing business right includes fostering diversity throughout our enterprise, *including in senior management*. Systematically managing diversity and inclusion has had a tremendously positive effect on our performance. We value inclusion because employees who bring with them a broad spectrum of skills, ideas, experience and background are crucial to our global success."[6]

6.      Indeed, diversity and inclusion are veritable buzzwords at Eaton.  CEO Cutler claims, apparently without any hint of irony, "Diversity and inclusion are two of the important pillars to our global talent strategy. Great talent is not defined by race, religion, sex or nationality. At Eaton, we want the best talent and are committed to insuring our culture is inclusive and attractive to the best talent."[7]

7.      Unfortunately, for all its talk of diversity and inclusion, Eaton fails to walk the walk.  Like its leadership team, the national sales force of Eaton's electrical sector resembles a workforce of decades past – a male-dominated culture with a complete absence of women in

---

[6] http://www.gcpartnership.com/Economic-Inclusion/Commission/Best-In-Class/Best-in-Class-Eaton-Corporation.aspx
[7] http://www.gcpartnership.com/Economic-Inclusion/Commission/Best-In-Class/Best-in-Class-Eaton-Corporation.aspx

management.

8.      Women comprise approximately twenty percent of the sales force employees working for Eaton's electrical sector in the U.S.   Although these female engineers have successfully sold Eaton's electrical distribution, generation, and power quality equipment and full-scale engineering and support services for many years, the Company has systemically excluded them from management.   Eaton's organizational chart speaks for itself: **Not one of the forty-four members of the electrical sector's General Sales Force management team is female.**



9.     Over a quarter-century ago, the U.S. Supreme Court characterized a workforce like Eaton's as one that effectively proves discrimination on its face – commonly known as the *inexorable zero* inference – without the need for further statistical evidence.[8]   Simply put, when the statistical disparity is *zero* – like Eaton's *zero* female sales managers – an employer's defenses against discrimination are implausible.

10.     Eaton endorses a corporate culture and employment practices that inexorably maintain a status quo from the dark ages – an all-male management team who blatantly discriminate against the women working under them.

### A.     Eaton's Corporate Culture of Gender Hostility and Discrimination

11.     Eaton's Code of Ethics lists "Respecting Diversity and Fair Employment Practices" among its fundamental principles of ethical conduct: "Throughout the world we are committed to respecting a culturally diverse workforce through practices that provide equal access and fair treatment to all employees on the basis of merit.  We do not tolerate harassment or discrimination in the workplace."

12.     Although Eaton's rhetoric and the images on its website paint a picture of a harmonious, diverse, and safe work environment, the reality could not be farther from the truth. Even by the standards of the male-dominated power industry, Eaton stands out for its culture of gender hostility and discrimination – and the Company's electrical sector is among the worst offenders.

---

[8] *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 342 n.23 (1977) ("Fine tuning of the statistics could not obscure the glaring absence of [female employees].... [T]he company's inability to rebut the inference of discrimination came not from a misuse of statistics but from '*the inexorable zero.*'").

13.     On nearly a daily basis, Eaton's male managers – who are supposed to "be fair and serve as role models of high ethical standards" per the Company's Ethics Guide – toss around lewd comments and gender epithets such as "bitch" and "dragon lady" with alarming frequency and nonchalance. For example, the head of electrical sales in the Northeast, Northeast Zone Director Al Vincenzi ("Manager Vincenzi") (at the top left of the organizational chart on page 4), repeatedly announced his plan to force Plaintiff Ms. Koosha out of the Company by telling employees, in both meetings and casual conversations alike, "I'm going to get rid of this bitch."

14.     District Sales Manager Pat Ferrang ("Manager Ferrang") commonly referred to female sales engineers as "the bitches." He often called Plaintiff Ms. Koosha a "bitch" and a "dragon lady" in her presence and in the presence of colleagues and representatives from Human Resources ("HR"). He defended his statements by claiming that such language is tolerated in sales.

15.     Not to be outdone by Managers Vincenzi and Ferrang, Area Manager Ron Quade ("Manager Quade") took a different but equally offensive approach with female sales engineers. He frequently discussed his open marriage and sexual preferences in the presence of female employees. He propositioned Ms. Koosha for sex in the office, and made comments about another female sales engineer's breasts. He often announced he wanted to "do" Plaintiff Ms. Gaitane "sexually" to other sales engineers and managers.

16.     After incessant abuse by Managers Vincenzi, Ferrang and Quade, Plaintiff Ms. Koosha suffered a heart attack caused by work-related stress the day before her annual review by Ferrang in the Eaton parking lot. Ms. Koosha was so traumatized and outraged by her male managers' treatment that she instructed hospital security not to let them visit her. As she told

HR, "Why would I want to see the faces of the people who put me in here?"  When she returned to work, Eaton did nothing to protect Ms. Koosha while her male managers continued to subject her to the same discrimination and harassment.

17.     While blatantly harassing female sales engineers, the same all-male management team has taken a great interest in the career development of its male employees.   Male employees are exclusively invited to golf outings and dinners expensed to the Company – known as "team-building" events – that give them access to more lucrative, career-enhancing opportunities and a significant advantage over their female counterparts.

18.     Moreover, the Company's predominantly male employees and managers often discuss Company business at sports bars, cigar bars, entertainment venues, and golf clubs on the Company's tab.  Plaintiffs and other female employees at Eaton were systematically excluded from these business meetings and functions, with one notable exception: a female sales engineer who was rumored to have engaged in inappropriate sexual conduct with a male manager.

19.     Eaton has done nothing to remedy this disparate treatment, even while paying lip service to the Company's supposed policy of providing equal access and fair treatment to all employees.  Indeed, Eaton's own example of wrongful conduct described in the Company's Ethics Guide eerily echoes the exclusion that Plaintiffs experienced: "The sales team (three males and one female) attends a customer lunch at a country club that has a male-only dining room.  The female is asked to wait in the car while the rest of the team attends the lunch."  The only part of this scenario that rings hollow is that Eaton's female sales employees would not even make it as far as the car.

20.     Eaton's female employees, including Plaintiffs, have repeatedly complained to HR about the Company's rampant gender discrimination and harassment.  But rather than

properly respond to these complaints, HR shields Eaton's male managers from any discipline and instead shifts the blame to the victims of the discrimination.  For example, when Ms. Koosha complained about Manager Ferrang's harassment, HR blamed *Ms. Koosha*, asking her to enroll in online courses about diversity and conflict resolution.   And when Ms. Koosha later complained about escalating retaliation against her, the same HR representative dismissively told her to "bring it down a notch" and said she understood why Manager Ferrang had a problem with her.   Eaton's HR Department also fails to keep complaints about gender discrimination confidential, which further fuels the hostile work environment and leaves Eaton's female employees vulnerable to retaliation.

## B.   Eaton's Discriminatory Employment Practices Against Female Sales Employees

21.     Eaton's culture of gender hostility pervades its employment practices. As Eaton's website states, "our values and culture define who we are – both individually and as an organization – and *direct our activities every day*."   Unfortunately for the Company's female sales employees, Eaton's culture promotes widespread discrimination in employment decisions, resulting in women being systematically underpaid and under-promoted across the sales force.

22.     Eaton employs a highly subjective promotion and compensation system that lacks transparency.  Eaton's male managers take advantage of the system to pay female employees much less than their male peers.  The Company has routinely denied high performing female employees, including Plaintiffs, bonuses and other forms of compensation that their male counterparts enjoy.

23.     In the general sales force where Plaintiffs worked at Eaton, female sales engineers are almost exclusively assigned to the less lucrative, service-oriented accounts.  Eaton's male managers routinely award credit for larger projects to male sales engineers, even when female

sales engineers were instrumental in completing the sale. Because this credit is relevant to bonus compensation, annual merit increases, and performance evaluations, male sales engineers enjoy a financial and promotional advantage over their female colleagues.

24.     In addition, Eaton consistently overlooks high performing female employees for promotion, while grooming less qualified male employees for leadership positions within the Company. Although approximately 100 female sales engineers currently work in Eaton's sales force in the electrical sector, not one Zone Director or District Manager is female.

25.     Plaintiffs Gaitane and Koosha are just the latest in a wave of female employees Eaton has driven out through unrelenting gender discrimination and harassment. When Plaintiffs and other female employees complained about the gender discrimination and hostile work environment at Eaton, the Company did nothing to remedy its practices. Instead, it upped the ante by further retaliating against Plaintiffs and others until it forced them out of the Company.

26.     To remedy the discrimination at Eaton, Plaintiffs Gaitane and Koosha bring this class action to challenge Eaton's systemic, company-wide discriminatory treatment of its female sales employees, including Plaintiffs. Such gender discrimination includes: (a) paying Plaintiffs and other female sales employees less than similarly-situated male employees; (b) denying promotions or other advancement opportunities to Plaintiffs and other female sales employees at the same rate as similarly-situated male employees; (c) carrying out discriminatory terminations, demotions, and/or job reassignments of Plaintiffs and other female sales employees based on their gender; (d) subjecting Plaintiffs and other female sales employees to disparate terms and conditions of employment based on their gender; and (e) retaliating against Ms. Gaitane and Ms. Koosha after they reported Eaton's gender discrimination, culminating in Ms. Gaitane's wrongful termination and Ms. Koosha's constructive discharge.

27.     Plaintiffs bring this lawsuit on their own behalf and on behalf of a class of similarly situated female employees in Eaton's electrical sector nationwide to remedy the gender discrimination that they have witnessed and experienced during their several years of exemplary service to the Company.  The lawsuit is designed to achieve systemic injunctive relief and to change Eaton's discriminatory pay and promotion policies and practices, as well as its unlawful perpetuation of a hostile work environment for female employees.

III.    **JURISDICTION AND VENUE**

28.     This Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1332(a)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-5(f), *et seq.*, as amended ("Title VII"), and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, *et seq.*, as amended by the Equal Pay Act of 1963 ("EPA"),  and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. 2000e-5(f) because Defendant Eaton has an office and conducts substantial business in this District, and because Plaintiffs Gaitane and Koosha worked in Eaton's New York, New York office when the unlawful employment practices were committed.

30.     Plaintiffs have standing to bring this suit as they have duly filed their administrative charges before the U.S. Equal Employment Opportunity Commission.  Ms. Koosha and Ms. Gaitane received their right to sue letters on January 25, 2011 and March 8, 2011, respectively, and have filed this action within ninety days of receiving their letters.

IV.     **THE PARTIES**

31.     Plaintiff **AMY GAITANE** is a resident of New Jersey and worked in New York and New Jersey during her employment at Eaton.  Plaintiff GAITANE was employed as a Sales

Engineer in Eaton's Electrical Engineering Services Sales ("EESS") division of the General Sales Force from August 2005 until her wrongful termination from the Company in April 2010.

32.    Plaintiff **MAHASTI KOOSHA** is a resident of New Jersey, and worked in New York and New Jersey during her employment at Eaton. Plaintiff KOOSHA was employed as a Sales Engineer in Eaton's EESS division of the General Sales Force from August 2003 until her constructive discharge from the Company in August 2010.

33.    Defendant **EATON CORPORATION** ("Eaton" or the "Company") is a power management company headquartered in Cleveland, Ohio. Its business office in New York is located at 830 Third Avenue, New York, New York 10022. Eaton is organized into five zones, each of which is split into several districts containing one or more offices: the Northeast Zone (including the Metro, New England, Philadelphia, and Pittsburgh Districts), the Southeast Zone (including the Atlanta, Capitol, Carolinas, Florida, and Mid-South Districts), the Central Zone (including the Chicago, Heartland, North Central, and Cincinnati Districts), the Southwest Zone (including the Houston, Austin, Dallas, and Southwest Districts), and the Western Zone (including the Los Angeles, San Francisco, Denver, and Northwest Districts). In 2010, Eaton brought in sales of $13.7 billion.

34.    Defendant **ALFRED VINCENZI** ("Manager Vincenzi") is the Northeast Zone Manager for Eaton. He is based in the New York, New York office.

35.    Defendant **PATRICK FERRANG** ("Manager Ferrang") is the District Sales Manager for the Metro District of Eaton's Northeast Zone. He is based in the Edison, New Jersey office, and reports to Manager Vincenzi. Manager Ferrang was the direct supervisor of Plaintiffs Gaitane and Koosha during the 2008-2009 time period.

36.    Defendant **RONALD QUADE** ("Manager Quade") was, at all times relevant to

the allegations contained in the Complaint, the Area Sales Manager for the Metro District of Eaton's Northeast Zone.  He was based in the Edison, New Jersey office, and reported to Manager Ferrang.  Manager Quade was the direct supervisor of Plaintiffs Gaitane and Koosha during the 2009-2010 time period.

## V.    FACTUAL ALLEGATIONS

### A.    PLAINTIFF AMY GAITANE

#### 1.    Ms. Gaitane Joined Eaton in 2005 and Earned Accolades for Her Sales Performance

37.    Ms. Gaitane began her employment with Eaton in August 2005 as a Sales Engineer in the Company's EESS division.  She worked for Eaton until the Company wrongfully terminated her employment in April 2010.

38.    Throughout her tenure with Eaton, Ms. Gaitane worked in the Metro Area, within the Northeast Zone.

39.    Ms. Gaitane brought with her thirteen years of experience in the electrical engineering industry and a B.S. in Industrial Engineering.

40.    While employed by Eaton, Ms. Gaitane consistently achieved superior results and distinguished herself as a top performer.  She won the National Sales Performer Award in 2007, 2008 and 2010.  Eaton gives this award to the top 1% of sales people in the Company nationwide.

#### 2.    Despite Ms. Gaitane's Exemplary Performance, Eaton Paid Her Less Than Her Male Colleagues

41.    Eaton failed to award Ms. Gaitane bonuses that she deserved based on her strong performance.  For example, the Company denied Ms. Gaitane compensation through the "Z account" supplemental compensation program in 2009.  After Ms. Gaitane complained about the

pay disparity, the Company paid her only $200 in Z account compensation in 2010, while her male counterparts were paid in the thousands of dollars. One of Ms. Gaitane's male co-workers received approximately $50,000 in Z account compensation in 2009.

42.   Eaton changed its bonus compensation structure when it underwent restructuring in 2008. Prior to that time, Ms. Gaitane received credit and bonus compensation for all orders that she completed.

43.   However, following the restructuring, managers had discretion to give credit for sales to a sales engineer of their choosing, regardless of who completed the sale. Eaton's male managers regularly used this discretion to award credit for more lucrative projects to male sales engineers. The credit was relevant to bonus compensation, annual merit increases, and performance evaluations.

44.   For several months following the restructuring, EESS Sales Engineers were not registered in the VISTA program, a computer program used to track sales and link orders to sales engineers. Accordingly, Ms. Gaitane did not receive credit for the sales that she completed.

45.   During this time, Ms. Gaitane expressed concern to her colleagues and managers that her exclusion from the VISTA program was unfair and that the new bonus compensation system was unclear. Although her managers indicated that they would add her to the VISTA program eventually, they did not answer her questions about how her bonus compensation would be calculated. In response to her questions, Manager Ferrang accused Ms. Gaitane of "not being a team player," and Manager Quade repeatedly advised her to "let the issue drop." Managers Ferrang and Quade also joked with Ms. Gaitane's male colleagues about the concerns she had brought to her managers in confidence. One male colleague warned Ms. Gaitane that her male colleagues and managers had begun to perceive her as a troublemaker for raising these concerns.

46.     When the Company finally added Ms. Gaitane to the VISTA program at the end of 2008, Ms. Gaitane attempted to recover credit for her sales from the intervening period. When she attempted to reassign her sales to her own VISTA account, her male colleagues and managers accused her of trying to take credit for their work.  In many cases, she was unable to recover credit for her sales and lost relationships with important customers.  Furthermore, when the newly assigned male employees made mistakes or received complaints from customers, they shifted the blame to Ms. Gaitane.

47.     Ms. Gaitane's total compensation following the change to the bonus compensation system was significantly lower than her total compensation prior to this change. Upon information and belief, other female employees were similarly harmed by this policy change and by their managers and coworkers using the policy to female employees' disadvantage.

48.     Additionally, Ms. Gaitane's male managers forced her to pursue less lucrative and less important customers while cherry-picking the most lucrative projects for male employees. Specifically, during a staff meeting in December 2008, Manager Ferrang berated Ms. Gaitane and another female EESS Sales Engineer for their recent sales, which included several large projects.  He threatened that they should pursue "small dollar book and bill" projects since the Company was desperate for revenue.  He directed them against pursuing large projects, which would have resulted in greater compensation and recognition.

3.   **Eaton Dissuaded Ms. Gaitane from Pursuing Larger, Career-Enhancing Projects and Denied Her Promotions in Favor of Less Qualified Males**

49.   Throughout Ms. Gaitane's employment with the Company, Eaton denied Ms. Gaitane promotions in favor of male employees and discouraged her from pursuing career-enhancing opportunities.

50.   Despite Ms. Gaitane's stellar performance at Eaton and her distinction as a National Sales Performer, not once did any of her male managers recommend her for a promotion or suggest that she pursue a management position. To the contrary, Ms. Gaitane's managers dissuaded her from pursuing promotions.

51.   Ms. Gaitane's male managers did not support her efforts on large projects, including sales with contractors. Sales with contractors have the potential to result in major orders that allow sales engineers to distinguish themselves and thereby increase their bonus compensation and promotional opportunities. Ms. Gaitane's male managers encouraged and supported her male colleagues on these types of projects, and instructed Ms. Gaitane to focus on smaller projects.

52.   By contrast, Ms. Gaitane's male managers took great interest in the development of her male colleagues. For example, when two young male employees were hired during Ms. Gaitane's tenure, her male managers invited them to golf outings and dinners expensed to the Company. According to the male employees, the purpose of these events was for the male managers to offer them advice and introduce them to important executives and customers. These opportunities for relationship-building gave male employees a significant advantage in their career development.

### 4. Eaton Forced Ms. Gaitane to Endure a Hostile Work Environment in Which Women Were Systematically Excluded and Sexually Harassed

53. The work environment at Eaton represents an old boys' club in which women, no matter how well they perform, can never feel comfortable or secure in their jobs.

54. To perpetuate the old boys' club, Ms. Gaitane's predominantly male managers consistently singled out "new guys" for mentorship and groomed them for leadership positions in place of female employees with equal or superior qualifications and with more tenure at the Company.

55. Female employees at Eaton were systematically excluded from business meetings and functions. For example, during Ms. Gaitane's employment, her predominantly male colleagues and managers often discussed Company business at sports bars, cigar bars, entertainment venues, and golf clubs on the Company's tab. Ms. Gaitane was never invited to these events and learned of them only after they took place.

56. Ms. Gaitane witnessed and experienced rampant sexual harassment in the workplace during her employment. For example, Manager Quade attempted to discuss his open marriage and sexual preferences with Ms. Gaitane and made sexually explicit comments about what he wanted to "do to her sexually" to other sales engineers and managers.

57. Manager Vincenzi further fueled this hostile work environment by making inappropriate lewd comments to Ms. Gaitane. For example, during a meeting with Manager Vincenzi in 2009, Ms. Gaitane stated that she had concerns that Manager Quade could not make solid decisions, describing him as a "wet noodle." Manager Vincenzi said that she was calling Manager Quade a "limp dick," and proceeded to announce this in front of several male colleagues in an open office lunch room. This comment made Ms. Gaitane feel embarrassed and

uncomfortable. She later discovered that Sales Engineers from other Eaton offices had heard about the incident.

58.    Ms. Gaitane's male managers and peers also made disparaging remarks regarding the ethnicity of her fiancé and suggested that she would not be interested in working after getting married.

59.    During her employment at Eaton, Ms. Gaitane witnessed many of her female peers being forced to leave Eaton due to the hostile environment. The Company's failure to hire and retain women made her feel isolated and targeted during her employment.

60.    Ms. Gaitane witnessed Manager Ferrang's efforts to force Plaintiff Koosha out of the department. Specifically, Manager Ferrang stated in the presence of several sales engineers and representatives from HR that Ms. Koosha should move from sales to purchasing because she was a "bitch." He also referred to her as a "dragon lady." Manager Vincenzi and Ms. Gaitane's colleague Joe Romano told Ms. Gaitane not to associate with Ms. Koosha. Manager Vincenzi warned Ms. Gaitane, "You don't want to get tarred with the same brush," and suggested that she move her seat during a training session in September 2009.

61.    Manager Vincenzi made numerous comments to Ms. Gaitane about gender dynamics in the workplace and the Company's efforts to retain female employees, implying that female employees were somehow less qualified or suited to be there. He acknowledged in an email that the workplace was male-dominated, or in his words "gender swayed." He suggested that he felt certain female employees had received positions specifically because of their gender rather than their qualifications. Manager Vincenzi also stated that he hired HR Manager Cara Walker because "she's a female and she's black."

5.   **Eaton Retaliated Against Ms. Gaitane for Reporting Gender Discrimination and Harassment, Culminating in Her Wrongful Termination**

62.    Eaton's HR Department was complicit in fostering an environment where sexual harassment is rampant.

63.    In the final months of 2009, Ms. Gaitane contacted HR Representative Ms. Walker via telephone to request a meeting. Fearing retaliation, Ms. Gaitane ultimately met with Ms. Walker in January 2010.

64.    During that meeting, Ms. Gaitane expressed her concerns regarding the unfair bonus system and the escalating discrimination and harassment. Eaton management and HR were aware of female employees' concerns regarding gender discrimination and sexual harassment even before Ms. Gaitane complained to HR. At the conclusion of the meeting, Ms. Walker stated that Ms. Gaitane had a strong reputation with the Company and that her complaints "added so much credibility" to concerns expressed by other employees. She probed Ms. Gaitane about other issues, such as the rumored sexual relationship between a female Sales Engineer and Manager Vincenzi. Ms. Walker promised to investigate Ms. Gaitane's complaints and stated that her identity would be kept confidential during the investigation.

65.    Immediately following Ms. Gaitane's meeting with Ms. Walker, Manager Quade began acting differently toward Ms. Gaitane, avoiding all contact with her. In February 2010, Ms. Koosha told Ms. Gaitane that Manager Quade told her that he knew about Ms. Gaitane's complaint to HR and thought it was unwarranted.

66.    In March 2010, Ms. Gaitane traveled to Palm Springs, California to receive an award for her strong sales performance in the preceding year. During the trip, she learned that the Company had frozen her corporate credit card. When Ms. Gaitane asked Manager Quade

about this matter, he confirmed that he had approved her expenses, but stated that the Eaton Expense System listed them as "under review." Manager Quade stated that he hoped that Ms. Gaitane was not in trouble for her expenses because he would be "on the hook, too" for approving them.

67.     On April 13, 2010, Ms. Walker called Ms. Gaitane into a meeting with Vice President of HR Barb Hapner and Corporate Auditor Ann Remmers. Managers Quade and Vincenzi were also in attendance. During the meeting, the management representatives told Ms. Gaitane that she was being audited for her expenses. They stated that they would notify her of the outcome of the audit, which could range from a note in her file to termination. Ms. Gaitane was concerned and requested a lawyer be present at that time. Eaton management responded that this was an internal meeting and demanded her cooperation.

68.     After the April 13 meeting, Ms. Gaitane experienced extreme insomnia, night sweats, stress, and anxiety about the outcome.

69.     Ms. Walker and Manager Quade requested a meeting with Ms. Gaitane two weeks later on April 28, 2010. At the meeting, Ms. Walker and Manager Quade formally terminated Ms. Gaitane's employment, stating that the termination was due to Ms. Gaitane's expensing ten $25 holiday gift cards for customers.

70.     During the termination meeting, Ms. Walker claimed that the Company had created a policy against giving gift cards to customers in 2007. However, Manager Quade never notified Ms. Gaitane of this policy. Rather, he approved numerous expenses related to gift cards for customers in 2007, 2008, and 2009, including expenses that Ms. Gaitane had submitted the prior two years without any issues.

71.    Upon information and belief, the Company sought to terminate Ms. Gaitane's employment in retaliation for her complaints about gender discrimination and audited her expenses in an effort to find a basis for termination.

72.    In terminating Ms. Gaitane's employment, the Company held her to different standards than her male colleagues, who committed several blatant violations of expense policies.  For example, male managers have approved and auditors have overlooked their expenses for rounds of golf, golf memberships, golf clubs, lunches, strip club charges, cigars, tickets and concession at Yankees games, trips to Atlantic City, and upgrades to company cars, all of which are expressly prohibited by Company policy.  Upon information and belief, Eaton never terminated a male employee for billing these expenses to the Company.

**B.    PLAINTIFF MAHASTI KOOSHA**

     **1.    Ms. Koosha Joined Eaton in 2003 and Distinguished Herself as a Top Performer**

73.    Ms. Koosha began her employment with Eaton in August 2003 as a Sales Engineer in Eaton's EESS division.  She worked for Eaton until her constructive discharge in August 2010.

74.    Throughout her tenure with Eaton, Ms. Koosha worked in the Metro Area within the Northeast Zone.

75.    Ms. Koosha holds a Bachelor's of Science degree in Electrical and Computer Engineering.  Prior to joining Eaton, she worked in the engineering industry for sixteen years.

76.    Ms. Koosha consistently achieved superior results at the Company.  In 2006 and 2007, she won the Peak Performer Award, which Eaton bestows upon only the top performers nationwide.

### 2. Eaton Paid Ms. Koosha Less Than Her Male Counterparts, Despite Her Stellar Performance

77.     Despite her exceptional performance, Eaton did not grant Ms. Koosha a raise during her last two years of employment.  Eaton also failed to award Ms. Koosha bonuses and other compensation that she deserved based on her strong performance.

78.     Like Ms. Gaitane, Ms. Koosha was adversely impacted by changes to the bonus compensation structure following a Company restructuring in early 2008.

79.     For several months after the announcement of the restructuring, none of Ms. Koosha's managers would explain the new bonus system to her.  Finally, in June 2008, Manager Ferrang announced that management would have the discretion to reassign accounts among EESS Sales Engineers and General Sales Engineers.  He told Ms. Koosha that if she wanted to earn the same total compensation that she had earned prior to the restructuring, she should find another job.

80.     Following the restructuring, Ms. Koosha's male managers used their discretion to reallocate credit for several of her largest projects to themselves or to her male colleagues.  Such reallocations affected Ms. Koosha's bonus compensation, annual performance reviews, and promotional opportunities.

81.     As a result of this new system, Ms. Koosha's total compensation decreased from approximately $183,000 in 2007 (the last full year before the system change) to $133,000 in 2009 (the first full year after the system change).

82.     At the beginning of 2009, the Company removed Ms. Koosha's sales identification number from all of her accounts on VISTA, a computer program that tracks sales. Although Ms. Koosha had developed relationships with several key customers over the course of more than six years, she was told that she needed to reestablish herself to win back her

customers. During this period of time, Ms. Koosha's male managers reassigned several key customers to her male colleagues and excluded her from important sales meetings related to her accounts.

83.     During this time, Ms. Koosha expressed concerns to her male managers about the recent changes and asked that each engineer receive credit for his or her own sales. In response to these concerns, Manager Ferrang accused Ms. Koosha of "not being a team player."

84.     In addition, Manager Vincenzi spread rumors among Ms. Koosha's colleagues that she was receiving credit for others' efforts and indicated that he wanted to get rid of her. He stated to Ms. Koosha's colleagues on numerous occasions, "She hasn't done shit." His statements damaged Ms. Koosha's professional reputation and diminished her chances of receiving a promotion.

### 3.     Eaton Management Denied Ms. Koosha Promotions in Favor of Less Qualified Males and Dissuaded Her from Pursuing Larger, Career-Enhancing Opportunities

85.     During Ms. Koosha's employment, Eaton denied her promotions in favor of male employees and discouraged her from pursuing career-enhancing opportunities.

86.     Ms. Koosha's male managers repeatedly prevented her from pursuing large projects, including sales with contractors, which had the potential to lead to greater compensation and promotional opportunities. Instead, they assigned those projects to Ms. Koosha's male colleagues and instructed her to focus on smaller projects.

87.     Although management originally categorized Ms. Koosha as a "consecutive producer" and promised advancement opportunities, her male managers later discouraged her from applying for promotions and undermined her ability to receive a promotion.

88.     Ms. Koosha first applied for a promotion in December 2006 for the position of

Power Management Sales Manager. Following her interview for the position, she did not hear from anyone at the Company regarding the status of her application for months. The HR Department eventually informed Ms. Koosha that Eaton had decided to hire a White American male candidate from outside the Company, John Ludlum, to fill the position. The HR representative stated that Eaton would fast-track Mr. Ludlum to higher management and groom him for leadership at the Company. Mr. Ludlum, who was not qualified for the position, performed so poorly that he was transferred to a less demanding role before leaving the Company only one year after being hired. The Power Management Sales Manager position remained vacant for another year after Mr. Ludlum left Eaton until the Company finally filled it with another male, even though Ms. Koosha's application remained outstanding.

89.    In 2010, Ms. Koosha applied for a promotion to the position of Negotiation Application Engineer, which fell within a higher salary band than her EESS position. Despite her superior qualifications, Ms. Koosha did not even receive an interview for this position.

90.    Ms. Koosha's managers also consistently discouraged her from applying for the position of Powerware Sales Representative. The position would have meant a promotion as it fell into a higher salary band and provided more interesting work and more opportunity for professional growth. When Ms. Koosha approached one male manager about this position and requested his support, he was dismissive and did not agree to support her or otherwise offer any guidance or assistance.

91.    By contrast, Ms. Koosha's managers took her male colleagues under their wings, inviting them to golf outings, dinners and other events on the Company dime. These relationship-building opportunities gave male employees a significant career advantage over their female colleagues, who were excluded from such events.

4.   **Eaton Subjected Ms. Koosha to Sexual Harassment and Gender Hostility in the Workplace**

92.   Throughout her employment with Eaton, Ms. Koosha endured a hostile work environment in which she was constantly belittled and harassed by the Company's male-dominated workforce. As a single mom shouldering the brunt of financial responsibility for her children, Ms. Koosha tried her best to endure this environment, but ultimately had to resign when the rampant gender hostility and harassment became intolerable.

93.   In or around 2005, a male field service employee asked Ms. Koosha, "What are you doing here? Shouldn't you be at home making dinner for your husband?"

94.   On another occasion, that same employee pointed his finger at Ms. Koosha and angrily exclaimed, "Go fuck yourself," when she offered constructive criticism regarding a drawing that he had prepared for a project.

95.   When Ms. Koosha complained to HR Representative Chris Lalomia about the incident, Ms. Lalomia told her "We give you a lot of credit for being able to work in a male-dominated field."

96.   Rather than set the tone for its employees by fostering a sense of inclusion, Eaton's male management worked hard to maintain its "good old boys" network. And HR sat back and facilitated the male-dominated workplace.

97.   Like Ms. Gaitane and other female employees, Ms. Koosha was regularly excluded from business meetings and functions, which often took place at sports bars, cigar bars, gold clubs and other entertainment venues. Upon information and belief, the only female employee who was invited to or welcome at these events was a female Sales Engineer who was rumored to have engaged in a sexual relationship with Manager Vincenzi.

98.   In July 2009, a non-local manager gave a presentation in Ms. Koosha's office.

Consistent with Eaton's exclusionary practices, Ms. Koosha was not invited to the presentation. When the non-local manager asked Manager Ferrang why Ms. Koosha was not present, Manager Ferrang dismissively and falsely stated that Ms. Koosha was "just a temp" who "helps."

99.    Ms. Koosha witnessed and experienced rampant sexual harassment in the workplace during her employment.   Manager Quade frequently attempted to discuss his open marriage and sexual activities with Ms. Koosha.   When he learned of Ms. Koosha's divorce in November 2007, he directly propositioned her for sex in the office.   After Ms. Koosha declined, Manager Quade became increasingly hostile toward her.

100.    Upon information and belief, Managers Vincenzi, Ferrang, and Quade sought to force Ms. Koosha out of the Company by subjecting her to increasing harassment and discrimination.   Manager Vincenzi told colleagues inside and outside Eaton that Ms. Koosha was "done with" and he was "getting rid of her."

101.    Beginning in early 2008, Ms. Koosha's male managers consistently referred to her as a "bitch" and a "dragon lady" in her presence and in the presence of colleagues and representatives from HR.   On one occasion, Manager Ferrang explained that because Ms. Koosha was of Iranian ancestry, she did not understand that bitch was an endearing term.   On another occasion, he explained that his wife was often called a bitch at work and that he still loved her.

102.    Even though Eaton was aware of these hostile and discriminatory comments, Ms. Koosha's managers suffered no consequences for making them.   In early 2009, Ms. Koosha complained to HR Representative Ms. Walker about Manager Ferrang's comment that Ms. Koosha failed to recognize "bitch" as an endearing term because she was not born in the United States.   Ms. Walker turned to Ms. Koosha and remarked "I can't believe he actually said that to

you." Nevertheless, no action was taken against Manager Ferrang or the other discriminators.

5.  **Eaton's Male Managers Attempted to Push Ms. Koosha Out by Fabricating Negative Performance Reviews, Causing Her to Suffer a Heart Attack**

103.  Beginning in 2008, Ms. Koosha's managers made fallacious statements regarding her performance and her professional relationships with customers. For example, they claimed that a customer on one of Ms. Koosha's most important and lucrative accounts had demanded during a meeting that Ms. Koosha be removed from the account. However, Ms. Koosha's colleagues present at the meeting stated that the customer never made such a comment.

104.  In July 2008, Manager Ferrang attempted to place a Letter of Concern in Ms. Koosha's file related to baseless accusations about her performance dating back to 2004. Concerned about the implications of this letter for her standing with the Company, Ms. Koosha contacted the Ombuds Department at Eaton. The representative at Ombuds advised her that Manager Ferrang could not put a Letter of Concern in her file because he had not fulfilled his obligation to administer a mid-year performance review. Ms. Koosha approached HR Representative Ms. Walker with this information and informed her that she had requested the mid-year performance review on numerous occasions. Upon information and belief, Manager Ferrang did not ultimately place the Letter of Concern in Ms. Koosha's file.

105.  In February 2009, Manager Ferrang filed Ms. Koosha's 2008 annual performance review without meeting with her. His failure to meet with her constituted a violation of Company policy. Manager Ferrang gave Ms. Koosha a rating of "Needs Improvement" and included several unfounded criticisms, many of which were related to her performance in earlier years – performances which had earned her only highly positive reviews in the past.

106.  Ms. Koosha demanded a meeting with Manager Ferrang, which he scheduled for

March 3, 2009. He then postponed the meeting to March 6, 2009, adding to Ms. Koosha's stress and anxiety.

107.    The day before her scheduled review, on March 5, 2009, Ms. Koosha suffered a heart attack in the parking lot of the Eaton facility, causing her to flatline three times. She was 48 years old. Ms. Koosha's cardiologist told her that her work-related stress had caused her blood vessels to contract, creating blockage in her veins. Before her heart attack, Ms. Koosha had no history of heart problems. She underwent numerous bypass surgeries and remained on Short Term Disability Leave until June 17, 2009.

108.    The heart attack has irrevocably altered Ms. Koosha's health and lifestyle. Nearly two years after this near-death experience, Ms. Koosha's heart efficiency level remains at only 35 percent, and her cardiologist does not expect any improvement. Ms. Koosha will also have to undergo surgery every five years to replace the battery of her defibrillator, which her doctors installed after her heart attack.

**6.    Eaton Retaliated Against Ms. Koosha for Complaining About the Company's Widespread Discrimination and Sexual Harassment, Forcing Her to Leave Eaton's Hostile Work Environment**

109.    Shortly before returning from leave in June 2009, Ms. Koosha filed a formal complaint with HR regarding the conduct of Manager Ferrang. Ms. Koosha stated that she felt she was being discriminated against based on her gender and her national origin. HR Representative Ms. Walker committed to investigate her complaint.

110.    Ms. Koosha heard nothing from HR during the following month. Near the end of July 2009, she sent an email to HR Representative Carolyn Hill regarding the status of her complaint. Ms. Hill scheduled a teleconference in August 2009.

111.    During that teleconference, Ms. Walker and Ms. Hill stated that they had found

Manager Ferrang in violation of the Company's Code of Ethics, Philosophy, and Workplace Practices.

112.   However, rather than properly respond to Ms. Koosha's formal complaint, the HR representatives blamed Ms. Koosha for any discrimination, harassment, and retaliation she had suffered. Ms. Walker and Ms. Hill confirmed that Manager Ferrang would not face termination or any other kind of discipline for his violation. Instead, they asked Ms. Koosha to enroll in several online courses, including "Getting Past Clashes: Valuing Team Diversity" and "The Path to Peace and Harmony."

113.   Later in August 2009, Manager Quade administered Ms. Koosha's mid-year performance evaluation. During that meeting, he stated that he had held several meetings with Ms. Koosha's important customers without notifying or including her. Manager Quade also claimed in the performance review that an important customer had concerns about working with her. When Ms. Koosha contacted that customer, he stated that he had no such concerns.

114.   In September 2009, one or more of Ms. Koosha's supervisors changed her Outlook email account password without her knowledge and accessed her Outlook inbox and sent files. When Ms. Koosha asked Ms. Walker who had changed her password and why, she responded with evasive and uninformative answers. Ms. Walker dismissively stated that Ms. Koosha needed to "bring it down a notch" and that she understood why Manager Ferrang had problems with her.

115.   In February 2010, Manager Quade met with Ms. Koosha to discuss her annual performance review for the preceding year. Manager Quade's portion of the review contained many unfounded accusations regarding her performance. For example, Manager Quade stated that Ms. Koosha had "alienated" several important customers. When Ms. Koosha contacted

these customers, they denied the accusations. One customer stated, "I have to choose my words very carefully right now, since Ron Quade has a certain agenda regarding you and has related that agenda to me. Having said all of that, no we do not have any issues with you." Ms. Koosha understood his comment to mean that Manager Quade had communicated to this customer his desire to push Ms. Koosha out of the Company by alleging poor performance.

116.   Throughout 2010, Managers Vincenzi, Ferrang, and Quade continued and intensified their efforts to push Ms. Koosha out of the Company. Because Ms. Koosha's previous experience had taught her that HR would not properly address their behavior, she felt that she had no recourse against her managers' harassment and discrimination.

117.   After enduring increasingly hostile and severe harassment and discrimination that was no longer bearable, and fearing imminent termination, Ms. Koosha tendered her resignation to the Company on August 27, 2010.

## V.   CLASS ACTION ALLEGATIONS

118.   Class Representatives Amy Gaitane and Mahasti Koosha and the class of female employees they seek to represent have been subjected to a systemic pattern-or-practice of gender discrimination involving a battery of practices which have had a continuing, unlawful disparate impact on them. Such gender discrimination includes (a) paying female Eaton sales employees less than their male counterparts; (b) denying female Eaton sales employees promotion and advancement opportunities in favor of less qualified male employees; (c) assigning female Eaton sales employees to lower level positions than less qualified male employees; (d) retaliating against female Eaton sales employees for complaining about gender discrimination; and (e) subjecting female Eaton sales employees to other disparate terms and conditions of employment.

119.   Eaton, in effect, bars female sales employees from better and higher-paying positions which have traditionally been held by male employees.  The systemic means of accomplishing such gender-based stratification include, but are not limited to, Defendants' development, assignment, compensation, promotion, advancement, and performance evaluation policies, practices and/or procedures.

120.   Defendants' development, assignment, compensation, promotion, advancement, and performance evaluation policies, practices and/or procedures incorporate the following gender-based discriminatory practices: (a) relying upon subjective judgments, procedures, and criteria which permit and encourage the incorporation of gender stereotypes and biases by Eaton's predominately male executive, managerial and supervisory staff in making promotion, performance evaluation, and compensation decisions; (b) refusing or failing to provide equal training and/or professional development opportunities to females; and (c) refusing or failing to establish and/or follow policies, practices, procedures, or criteria that reduce or eliminate disparate impact and/or intentional biases or stereotypes.

121.   Defendants' promotion policies, practices, and/or procedures have had a disparate impact on the Class Representatives and the members of the class.  Such procedures are not valid, job-related, or justified by business necessity.

122.   Defendants' development, compensation, assignment, promotion, training, performance evaluation, termination and transfer policies, practices and/or procedures have a disparate impact on the Class Representatives and the class they seek to represent.  Such practices form a part of the Defendants' overall pattern-or-practice of keeping women in the lower classifications which have less desirable terms and conditions of employment.

123.    Because of Defendants' systemic pattern-or-practice of gender discrimination and disparate impact discrimination, the Class Representatives and class they seek to represent have been adversely affected and have experienced harm, including the loss of compensation, wages, back pay, and employment benefits.

124.    Eaton has failed to impose adequate discipline on managers and employees who violate equal employment opportunity laws and has failed to create adequate incentives for its managerial and supervisory personnel to comply with such laws regarding the employment policies, practices, and procedures described above.

125.    The Class Representatives and the class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit is their only means of securing adequate relief.  The Class Representatives and the class are now suffering, and will continue to suffer, irreparable injury from Defendants' ongoing, unlawful policies, practices, and/or procedures as set forth herein unless those policies, practices, and procedures are enjoined by this Court.

A.    **General Facts Relevant to Class Claims and Class Definition**

126.    Class Representatives Gaitane and Koosha seek to maintain claims on their own behalf and on behalf of a class of current, former and future female sales employees, including but not limited to sales engineers, employed in Eaton's electrical sector in the United States.

127.    The class consists of all female sales employees who are, have been, or will be employed by Eaton nationwide at any time during the applicable liability period until the date of judgment.  Upon information and belief, there are hundreds of such employees in the proposed class.

128.    The Class Representatives seek to represent all of the female employees described

above. The systemic gender discrimination and disparate impact discrimination described in this Complaint has been, and is, continuing in nature.

**B.    Efficiency of Class Prosecution of Common Claims**

129.   Certification of a class of female sales employees is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of the Class Representatives and the proposed class.   The individual claims of the Class Representatives require resolution of the common question of whether Defendants have engaged in a systemic pattern and/or practice of gender discrimination against female sales employees. Class Representatives Gaitane and Koosha seek remedies to eliminate the adverse effects of such discrimination in their own life, career and working conditions, and in the lives, careers and working conditions of the proposed class members, and to prevent continued gender discrimination in the future. Plaintiffs have standing to seek such relief because of the adverse effect that such discrimination has had on them individually and on female employees generally. In order to gain such relief for themselves, as well as for the class members, Plaintiffs will first establish the existence of systemic gender discrimination as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.   Certification of the proposed class of females is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the Class Representatives, the proposed class, and Defendants.

130.   The Class Representatives' individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate

treatment claims of the type at issue in this case. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

### C.   Numerosity and Impracticability of Joinder

131.   The class which the Class Representatives seek to represent is too numerous to make joinder practicable. Upon information and belief, the proposed class consists of hundreds of current, former and future female sales employees during the liability period. Defendants' pattern and/or practice of gender discrimination also makes joinder impracticable by discouraging females from applying for or pursuing promotional, training, or transfer opportunities, thereby making it impractical and inefficient to identify many members of the class prior to determination of the merits of Defendants' class-wide liability.

### D.   Common Questions of Law and Fact

132.   The prosecution of the claims of the Class Representatives will require the adjudication of numerous questions of law and fact common to both their individual claims and those of the class they seek to represent. The common questions of law include, *inter alia*: whether Defendants have engaged in unlawful, systemic gender discrimination in their compensation, selection, assignment, promotion, advancement, transfer, training and discipline policies, practices, and/or procedures, and in the general terms and conditions of work and employment; whether Defendants are liable for a continuing systemic violation of Title VII, and/or other statutes; and a determination of the proper standards for proving a pattern or practice of discrimination by Defendants against the Company's female sales employees. The common questions of fact include, *inter alia*: whether Defendants have, through their policies, practices, and/or procedures: (a) compensated female sales employees less than similarly-situated males through the use of salary, bonuses, and/or other perks; and (b) precluded or

delayed the selection and promotion of female sales employees into higher level jobs traditionally held by male employees.

133.   The employment policies, practices, and procedures to which the Class Representatives and the class members are subjected are set at Eaton's corporate level and apply universally to all class members. These employment policies, practices and procedures are not unique or limited to any department or office; rather, they apply to all departments or offices and, thus, affect the Class Representatives and class members in the same ways no matter the facility, office, department, or position in which they work.

134.   Throughout the liability period, a disproportionately large percentage of the managers, executives and officers at Eaton have been male.

135.   Discrimination in selection, promotion, advancement and assignment occurs as a pattern and/or practice throughout Eaton. Selection, promotion, advancement and assignment opportunities are driven by personal familiarity, subjective decision-making, pre-selection and interaction between male managers and subordinates rather than by merit or equality of opportunity. As a result, male employees have advanced and continue to advance more rapidly to better and higher-paying jobs than do female employees. Defendants' policies, practices, and/or procedures have had an adverse impact on female sales employees seeking selection for, or advancement to, better and higher-paying positions. In general, the higher the level of the job classification, the lower the percentage of female employees holding it.

### E.   Typicality of Claims and Relief Sought

136.   The claims of Class Representatives Gaitane and Koosha are typical of the claims of the class. The relief sought by the Class Representatives for gender discrimination complained of herein is also typical of the relief which is sought on behalf of the class.

137.   Like the members of the class, Class Representatives Gaitane and Koosha are sales employees who worked in Eaton's electrical sector during the liability period.

138.   Discrimination in selection, promotion, advancement, assignment and training affects the compensation of the Class Representatives and all the employee class members in the same or similar ways.

139.   Eaton has failed to create adequate incentives for its executives and managers to comply with its own policies and equal employment opportunity laws regarding each of the employment policies, practices, and procedures referenced in this Complaint, and has failed to discipline adequately its executives, managers and other employees when they violate the Company policy or discrimination laws.  These failures have affected the Class Representatives and the class members in the same or similar ways.

140.   The relief necessary to remedy the claims of the Class Representatives is exactly the same as that necessary to remedy the claims of the class members in this case.  Class Representatives Gaitane and Koosha seek the following relief for their individual claims and for those of the members of the proposed class: (a) a declaratory judgment that Defendants have engaged in systemic gender discrimination against female sales employees by (1) paying female sales employees less than their male counterparts, and (2) denying female sales employees promotions into better and higher-paying positions; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of Eaton's promotion, transfer, training, assignment, performance evaluation, compensation, and discipline policies, practices, and procedures – so that female sales employees will be able to compete fairly in the future for promotions, transfers, and assignments to better and higher-paying classifications with terms and conditions of employment traditionally enjoyed by male

employees; (d) back pay, front pay, and other equitable remedies necessary to make the female sales employees whole from the Defendant's past discrimination; (f) punitive and nominal damages to prevent and deter Eaton from engaging in similar discriminatory practices in the future; (g) compensatory damages; (h) pre- and post-judgment interest; and (i) attorneys' fees, costs and expenses.

F.   **Adequacy of Representation**

141.   The Class Representatives' interests are co-extensive with those of the members of the proposed class which they seek to represent in this case.  Class Representatives Gaitane and Koosha seek to remedy Defendants' discriminatory employment policies, practices, and procedures so that female sales employees will no longer be prevented from receiving higher pay and advancing into higher-paying and/or more desirable higher-level positions.  Plaintiffs are willing and able to represent the proposed class fairly and vigorously as they pursue their individual claims in this action.

142.   Class Representatives Gaitane and Koosha have retained counsel who are qualified, experienced, and able to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity.  The combined interests, experience, and resources of Plaintiffs' counsel to litigate competently the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

G.   **Requirements Of Rule 23(b)(2)**

143.   Defendants have acted on grounds generally applicable to the Class Representatives and the class by adopting and following systemic policies, practices, and/or procedures which are discriminatory.  Gender discrimination is Defendants' standard operating

procedure rather than a sporadic occurrence. Defendants have refused to act on grounds generally applicable to the class by, *inter alia*: (a) failing to pay female sales employees on par with similarly-situated male employees; (b) failing to promote female sales employees on par with similarly-situated male employees; (c) refusing to adopt and apply selection, assignment, promotion, training, performance evaluation, compensation, and discipline policies, practices, and/or procedures which do not have a disparate impact on, or otherwise systemically discriminate against, female sales employees; and (d) refusing to provide equal terms and conditions of employment for female sales employees. Defendants' systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate the requested final injunctive and declaratory relief with respect to the class as a whole.

144. Injunctive and declaratory relief are the predominant relief sought in this case. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic gender discrimination against female sales employees at Eaton. Such relief is the factual and legal predicate for the Class Representatives' and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by such systematic discrimination.

## H.     Requirements of Rule 23(b)(3)

145. The common issues of fact and law affecting the claims of Class Representatives Gaitane and Koosha and proposed class members, including, but not limited to, the common issues previously identified herein, predominate over any issues affecting only individual claims. These issues include whether Defendants have engaged in gender discrimination against female sales employees by denying them equal pay, promotion, and advancement opportunities and

whether Defendants have tolerated a culture of gender discrimination directed against such employees.

146.   A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class Representatives and members of the proposed class.

147.   The cost of proving Defendants' pattern-or-practice of gender discrimination makes it impracticable for the Class Representatives and members of the proposed class to prosecute their claims individually.

## VI.   COLLECTIVE ACTION ALLEGATIONS (EQUAL PAY ACT)

148.   Named Plaintiffs Gaitane and Koosha incorporate by reference the allegations from the previous paragraphs of this Complaint alleging class-based discrimination against similarly-situated female employees.

149.   Named Plaintiffs bring collective violations of the Equal Pay Act ("EPA") as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) on behalf of the EPA Collective Action Opt-In Class, which consists of all female sales employees who are, have been or will be employed by Eaton's electrical sector in the United States at any time during the liability period. The EPA action includes female sales employees who (a) were not compensated equally to males who had substantially similar job classifications, functions, families, titles and/or duties, (b) were not compensated equally to males who performed substantially similar work, and (c) who were denied promotion and advancement opportunities that would result in greater compensation in favor of lesser qualified male employees.

150.   Questions of law and fact common to the EPA Collective Action Plaintiffs as a

whole include but are not limited to the following:   (a) Whether Defendants unlawfully failed and continue to fail to compensate female sales employees at a level commensurate with similarly situated male employees;  (b) Whether Defendants unlawfully failed and continue to fail to promote and advance female sales employees in a fashion commensurate with similarly qualified males;  (c) Whether Defendants' policy and/or practice of failing to compensate female sales employees on a par with comparable male employees as a result of (a) and (b) violates applicable provisions of the EPA; and (d) Whether Defendants' failure to compensate female sales employees on a par with comparable male employees as a result of (a) and (b) was willful within the meaning of the EPA.

151.   Counts for violation of the EPA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) for all claims asserted by the EPA Collective Action Plaintiffs because the claims of the Named Plaintiffs are similar to the claims of the EPA Collective Action Plaintiffs.

152.   Plaintiffs Gaitane and Koosha and the EPA Collective Action Plaintiffs (a) are similarly situated; (b) have substantially similar job classifications, functions, families, titles and/or duties; and (c) are subject to Defendants' common policy and/or practice of gender discrimination in (i) failing to compensate female sales employees on par with men who perform substantially equal work and/or hold equivalent levels and positions, and (ii) failing to provide female sales employees equal pay by denying opportunities for promotion and advancement to them comparable to those afforded to males who perform substantially equal work.

## CLASS AND COLLECTIVE ACTION COUNTS

### COUNT I
### (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII") – 42 U.S.C. § 2000e, *et seq.*, AS AMENDED GENDER DISCRIMINATION
### (Against Defendant Eaton)

153.   Plaintiffs Gaitane and Koosha re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

154.   This Count is brought on behalf of Plaintiffs and all members of the class.

155.   Defendant Eaton has discriminated against Plaintiffs and all members of the class in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), by subjecting them to different treatment on the basis of their gender.  Plaintiffs have suffered both disparate impact and disparate treatment as a result of the Company's wrongful conduct.

156.   Eaton has discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees and by subjecting them to discriminatory pay, discriminatory denial of promotions, discriminatory performance evaluations, discriminatory discipline decisions, disparate terms and conditions of employment, and other forms of discrimination, in violation of Title VII.

157.   Eaton's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiffs and all members of the class, entitling Plaintiffs and all members of the class to punitive damages.

158.   By reason of the continuous nature of Eaton's discriminatory conduct, which persisted throughout the employment of Plaintiffs and the members of the class, Plaintiffs and

the members of the class are entitled to application of the continuing violations doctrine to all violations alleged herein.

159.   As a result of Eaton's conduct alleged in this complaint, Plaintiffs and the members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

160.   Eaton's policies, practices and/or procedures have produced a disparate impact on Plaintiffs and the members of the class with respect to the terms and conditions of their employment.

161.   By reason of Eaton's discrimination, Plaintiffs and the members of the class are entitled to all remedies available for violations of Title VII, including an award of punitive damages.

162.   Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT II
### (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF NEW YORK EXECUTIVE LAW § 296
### GENDER DISCRIMINATION
### (Against All Defendants)

163.   Plaintiffs Gaitane and Koosha re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

164.   This Count is brought on behalf of Plaintiffs and all members of the class.

165.   Defendants have discriminated against Plaintiffs and all members of the class in violation of Section 296 of the New York Executive Law by subjecting them to disparate impact and disparate treatment discrimination on the basis of their gender.

166.   Defendants have discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees and by subjecting them to discriminatory pay, discriminatory denial of promotions, discriminatory performance evaluations, disparate terms and conditions of employment, and other forms of discrimination, in violation of the New York Executive Law.

167.   As a result of Defendants' conduct alleged in this complaint, Plaintiffs and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

168.   By reason of Defendants' discrimination, Plaintiffs and all members of the class are entitled to all remedies available for violations of the New York Executive Law.

## COUNT III
### (INDIVIDUAL AND CLASS CLAIMS)

## VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107 – GENDER DISCRIMINATION
### (Against All Defendants)

169.   Plaintiffs Gaitane and Koosha re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

170.   This Count is brought on behalf of Plaintiffs and all members of the class.

171.   Defendants have discriminated against the Class Representatives and all members of the class in violation of Section 8-107 of the New York City Administrative Code by subjecting them to disparate impact and disparate treatment discrimination on the basis of their gender.

172.   Defendants have discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees and by

subjecting them to discriminatory pay, discriminatory denial of promotions, discriminatory performance evaluations, disparate terms and conditions of employment, and other forms of discrimination, in violation of the New York City Administrative Code.

173.   As a result of Defendants' conduct alleged in this complaint, Plaintiffs and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

174.   By reason of Defendants' discrimination, Plaintiffs and all members of the class are entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

## COUNT IV
### (INDIVIDUAL AND CLASS CLAIMS)

### VIOLATION OF N.J. STAT. § 10, subd. 5-12 ("Law Against Discrimination") – GENDER DISCRIMINATION
#### (Against All Defendants)

175.   Plaintiffs Gaitane and Koosha re-allege and incorporate by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

176.   This Count is brought on behalf of Plaintiffs and all members of the class.

177.   Defendants have discriminated against Plaintiffs and all members of the class in violation of Section 10, subdivision 5-12 of the New Jersey Statute, by subjecting them to disparate impact and disparate treatment discrimination on the basis of their gender.

178.   Defendants have discriminated against Plaintiffs and all members of the class by treating them differently from and less preferably than similarly-situated male employees and by subjecting them to discriminatory pay, discriminatory denial of promotions, discriminatory

performance evaluations, disparate terms and conditions of employment, and other forms of discrimination, in violation of the New Jersey Law Against Discrimination.

179.   As a result of Defendants' conduct alleged in this complaint, Plaintiffs and all members of the class have suffered and continue to suffer harm, including but not limited to lost earnings, lost benefits, lost future employment opportunities, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish..

180.   By reason of Defendants' discrimination, Plaintiffs and all members of the class are entitled to all remedies available for violations of the New Jersey Law Against Discrimination, including an award of punitive damages.

## COUNT V
### (INDIVIDUAL AND COLLECTIVE ACTION CLAIMS)

### VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED BY THE EQUAL PAY ACT OF 1963 – 29 U.S.C. § 206(d), DENIAL OF EQUAL PAY FOR EQUAL WORK
### (Against All Defendants)

181.   Named Plaintiffs re-allege and incorporate by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

182.   Defendants, employers of the Named Plaintiffs and the EPA Collective Action Plaintiffs within the meaning of the Equal Pay Act, have discriminated against the Named Plaintiffs and EPA Collective Action Plaintiffs in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d), as amended by the Equal Pay Act of 1963, by subjecting them to unequal pay on the basis of sex.

183.   Defendants have discriminated against the Named Plaintiffs and EPA Collective Action Plaintiffs by treating them differently from and less preferably than similarly-situated male employees who performed jobs which required equal skill, effort, and responsibility, and

which were performed under similar working conditions. Defendants so discriminated by subjecting them to discriminatory pay, discriminatory denials of bonuses and other compensation incentives, discriminatory denials of promotions and other advancement opportunities that would result in higher compensation, and other forms of discrimination in violation of the Equal Pay Act.

184. Defendants caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the Equal Pay Act. Moreover, Defendants knew of or showed reckless disregard for the fact that their conduct was in violation of the Equal Pay Act.

185. As a result of Defendants' conduct alleged in this Complaint and/or Defendants' willful, knowing and intentional discrimination, the Named Plaintiffs and EPA Collective Action Plaintiffs have suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss.

186. The Named Plaintiffs and EPA Collective Action Plaintiffs are therefore entitled to all legal and equitable remedies, including doubled compensatory awards for all willful violations.

187. Attorneys' fees should be awarded under 29 U.S.C. §§ 216, *et seq.*

# INDIVIDUAL COUNTS

## COUNT VI
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000(e), *et seq.*, AS AMENDED
### SEXUAL HARASSMENT - HOSTILE WORK ENVIRONMENT
### (Against Defendant Eaton)

188.   Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

189.   Managers Vincenzi, Ferrang, and Quade's severe and pervasive sexually-charged conduct cumulatively created an abusive and hostile work environment that altered the terms and conditions of Ms. Gaitane's employment.

190.   Eaton failed to take any action in response to Ms. Gaitane's and other female employees' complaints about Managers Vincenzi, Ferrang, and Quade's conduct.  Eaton did not thoroughly investigate these complaints, take any remedial or corrective measures, or otherwise step in to prevent further occurrences.

191.   Ms. Gaitane was emotionally harmed by the hostile and abusive atmosphere imposed upon her as well as Eaton's failure to respond thereto.

192.   By reason of Eaton's conduct as alleged herein, Plaintiff Gaitane is entitled to all remedies available for violations of Title VII, , including an award of punitive damages.

193.   Attorneys' fees should be awarded under 42 U.S.C. §2000e-5(k).

## COUNT VII
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

## VIOLATIONS OF NEW YORK EXECUTIVE LAW § 296
## SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
### (Against All Defendants)

194.   Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

195.   Managers Vincenzi, Ferrang, and Quade's severe and pervasive sexually-charged conduct cumulatively created an abusive and hostile work environment that altered the terms and conditions of Ms. Gaitane's employment.

196.   Eaton failed to take any action in response to Ms. Gaitane's and other female employees' complaints about Managers Vincenzi, Ferrang, and Quade's conduct.  Eaton did not thoroughly investigate these complaints, take any remedial or corrective measures, or otherwise step in to prevent further occurrences.

197.   Ms. Gaitane was emotionally harmed by the hostile and abusive atmosphere imposed upon her as well as Eaton's failure to respond thereto.

198.   By reason of Defendants' conduct as alleged herein, Plaintiff Gaitane is entitled to all remedies available for violations of N.Y. Exec. L. § 296.

## COUNT VIII
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

## VIOLATIONS OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107
## SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
### (Against All Defendants)

199.   Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

200.    Managers Vincenzi, Ferrang, and Quade's severe and pervasive sexually-charged conduct cumulatively created an abusive and hostile work environment that altered the terms and conditions of Ms. Gaitane's employment.

201.    Eaton failed to take any action in response to Ms. Gaitane's and other female employees' complaints about Managers Vincenzi, Ferrang, and Quade's conduct.  Eaton did not thoroughly investigate these complaints, take any remedial or corrective measures, or otherwise step in to prevent further occurrences.

202.    Ms. Gaitane was emotionally harmed by the hostile and abusive atmosphere imposed upon her as well as Eaton's failure to respond thereto.

203.    By reason of Defendants' conduct as alleged herein, Plaintiff Gaitane is entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

## COUNT IX
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

## VIOLATION OF N.J. STAT. § 10, subd. 5-12
### SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
### (Against All Defendants)

204.    Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

205.    Managers Vincenzi, Ferrang, and Quade's severe and pervasive sexually-charged conduct cumulatively created an abusive and hostile work environment that altered the terms and conditions of Ms. Gaitane's employment.

206.    Eaton failed to take any action in response to Ms. Gaitane's and other female employees' complaints about Managers Vincenzi, Ferrang, and Quade's conduct.  Eaton did not

thoroughly investigate these complaints, take any remedial or corrective measures, or otherwise step in to prevent further occurrences.

207.   Ms. Gaitane was emotionally harmed by the hostile and abusive atmosphere imposed upon her as well as the failure of Eaton to respond thereto.

208.   By reason of the Defendants' conduct as alleged herein, Ms. Gaitane is entitled to all remedies available for violations of N.J. Stat. § 10, subd. 5-12, including an award of punitive damages.

## COUNT X

### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

### VIOLATION OF THE NEW YORK EQUAL PAY LAW– N.Y. LABOR LAW § 194 DENIAL OF EQUAL PAY FOR EQUAL WORK (Against All Defendants)

209.   Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

210.   Defendants, employers of Plaintiff Gaitane within the meaning of the New York Equal Pay Law, have discriminated against Plaintiff Gaitane in violation of the New York Labor Law § 194, by subjecting her to unequal pay on the basis of sex.

211.   Defendants have discriminated against Plaintiff Gaitane by treating her differently from and less preferably than similarly-situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions. Defendants so discriminated by subjecting her to discriminatory pay, discriminatory denials of bonuses and other compensation incentives, discriminatory denials of promotions and other advancement opportunities that would result in higher compensation, and other forms of discrimination in violation of the New York Equal Pay Law.

212.    Defendants caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the New York Equal Pay Law. Moreover, Defendants willfully violated the New York Equal Pay Law by intentionally paying women less than men.

213.    As a result of Defendants' conduct alleged in this Complaint and/or Defendants' willful, knowing and intentional discrimination, Plaintiff Gaitane has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

214.    Plaintiff Gaitane is therefore entitled to all remedies available for violations of N.Y. Labor Law § 194, including 25 percent compensatory awards and attorneys' fees and costs for all willful violations.

### COUNT XI
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-3 – RETALIATION
### (Against Defendant Eaton)

215.    Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

216.    Throughout her employment with Eaton, Plaintiff Gaitane repeatedly voiced concerns about the Company's unfair compensation system, ultimately lodging a complaint with Human Resources regarding the Company's gender discrimination and sexual harassment.

217.    In retaliation for Ms. Gaitane's complaints regarding Eaton's unlawful employment practices, Eaton wrongfully terminated her.

218.   Eaton's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Gaitane, entitling her to punitive damages.

219.   As a result of Eaton's conduct, Plaintiff Gaitane has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

220.   By reason of Eaton's retaliation, Plaintiff Gaitane is entitled to all remedies available for violations of Title VII, including an award of punitive damages.

221.   Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT XII
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

### VIOLATION OF NEW YORK EXECUTIVE LAW § 296 – RETALIATION
### (Against All Defendants)

222.   Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

223.   Throughout her employment with Eaton, Plaintiff Gaitane repeatedly voiced concerns about Eaton's unfair compensation system, ultimately lodging a complaint with Human Resources regarding Defendants' gender discrimination and sexual harassment.

224.   In retaliation for Ms. Gaitane's complaints regarding Defendants' unlawful employment practices, Defendants wrongfully terminated her.

225.   By reason of Defendants' retaliation, Plaintiff Gaitane is entitled to all remedies available for violations of the New York Executive Law.

## COUNT XIII
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

## VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 7 – RETALIATION
### (Against All Defendants)

226.   Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

227.   Throughout her employment with Eaton, Plaintiff Gaitane repeatedly voiced concerns about Eaton's unfair compensation system, ultimately lodging a complaint with Human Resources regarding Defendants' gender discrimination and sexual harassment.

228.   In retaliation for Ms. Gaitane's complaints regarding Defendants' unlawful employment practices, Defendants wrongfully terminated her.

229.   By reason of Defendants' retaliation, Plaintiff Gaitane is entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

## COUNT XIV
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

## VIOLATION OF N.J. STAT. § 10, subd. 5-12 – RETALIATION
### (Against All Defendants)

230.   Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

231.   Throughout her employment with Eaton, Plaintiff Gaitane repeatedly voiced concerns about Eaton's unfair compensation system, ultimately lodging a complaint with Human Resources regarding Defendants' gender discrimination and sexual harassment.

232.   In retaliation for Ms. Gaitane's complaints regarding Defendants' unlawful employment practices, Defendants wrongfully terminated her.

233.   By reason of Eaton's retaliation, Plaintiff Gaitane is entitled to all remedies available for violations of the New Jersey Statute, including an award of punitive damages.

## COUNT XV
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

### VIOLATIONS OF THE EQUAL PAY ACT, 29 U.S.C. § 215(a)(3) – RETALIATION

### (Against All Defendants)

234.   Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

235.   Throughout her employment with Eaton, Plaintiff Gaitane repeatedly voiced concerns about Eaton's unfair compensation system, ultimately lodging a complaint with Human Resources regarding Defendants' gender discrimination and sexual harassment.

236.   In retaliation for Ms. Gaitane's complaints regarding Defendants' unlawful employment practices, Defendants wrongfully terminated her.

237.   By reason of Defendants' conduct as alleged herein, Plaintiff Gaitane is entitled to all remedies available under the Equal Pay Act, including doubled compensatory awards for all willful violations.

238.   Attorneys' fees should be awarded under 29 U.S.C. § 216, et seq.

## COUNT XVI
### (INDIVIDUAL CLAIM – PLAINTIFF GAITANE)

### VIOLATION OF THE NEW YORK EQUAL PAY LAW--
### N.Y. LABOR LAW § 194 – RETALIATION
### (Against All Defendants)

239.   Plaintiff Gaitane re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

240.   Throughout her employment with Eaton, Plaintiff Gaitane repeatedly voiced concerns about Eaton's unfair compensation system, ultimately lodging a complaint with Human Resources regarding Defendants' gender discrimination and sexual harassment.

241.   In retaliation for Ms. Gaitane's complaints regarding Defendants' unlawful employment practices, Defendants wrongfully terminated her.

242.   By reason of Defendants' conduct as alleged herein, Plaintiff Gaitane is entitled to all remedies available under the New York Equal Pay Law.

## COUNT XVII
### (INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)

### VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,
### 42 U.S.C. §§ 2000(e), *et seq.*, AS AMENDED
### SEXUAL HARASSMENT - HOSTILE WORK ENVIRONMENT
### (Against Defendant Eaton)

243.   Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

244.   Managers Vincenzi, Ferrang, and Quade's severe and pervasive sexually-charged conduct cumulatively created an abusive and hostile work environment that altered the terms and conditions of Ms. Koosha's employment.

245.   Eaton failed to take any action in response to Ms. Koosha's and other female employees' complaints about Managers Vincenzi, Ferrang, and Quade's conduct. Eaton did not thoroughly investigate these complaints, take any remedial or corrective measures, or otherwise step in to prevent further occurrences.

246.   Ms. Koosha was emotionally harmed by the hostile and abusive atmosphere imposed upon her as well as Eaton's failure to respond thereto. Ms. Koosha was also physically harmed by this hostile environment as she endured a life-threatening heart attack.

247.   By reason of Eaton's conduct as alleged herein, Ms. Koosha is entitled to all remedies available for violations of Title VII, including an award of punitive damages.

248.   Attorneys' fees should be awarded under 42 U.S.C. §2000e-5(k).

## COUNT XVIII
### (INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)

### VIOLATIONS OF NEW YORK EXECUTIVE LAW § 296, SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT (All Defendants)

249.   Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

250.   Managers Vincenzi, Ferrang, and Quade's severe and pervasive sexually-charged conduct cumulatively created an abusive and hostile work environment that altered the terms and conditions of Ms. Koosha's employment.

251.   Eaton failed to take any action in response to Ms. Koosha's and other female employees' complaints about Managers Vincenzi, Ferrang, and Quade's conduct. Eaton did not thoroughly investigate these complaints, take any remedial or corrective measures, or otherwise step in to prevent further occurrences.

252.    Ms. Koosha was emotionally harmed by the hostile and abusive atmosphere imposed upon her as well as Eaton's failure to respond thereto.  Ms. Koosha was also physically harmed by this hostile environment as she endured a life-threatening heart attack.

253.    By reason of Defendants' conduct as alleged herein, Plaintiff Koosha is entitled to all remedies available for violations of N.Y. Exec. L. § 296.

**COUNT XIX**
**(INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)**

**VIOLATIONS OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107**
**SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT**
**(Against All Defendants)**

254.    Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

255.    Managers Vincenzi, Ferrang, and Quade's severe and pervasive sexually-charged conduct cumulatively created an abusive and hostile work environment that altered the terms and conditions of Ms. Koosha's employment.

256.    Eaton failed to take any action in response to Ms. Koosha's and other female employees' complaints about Managers Vincenzi, Ferrang, and Quade's conduct.  Eaton did not thoroughly investigate these complaints, take any remedial or corrective measures, or otherwise step in to prevent further occurrences.

257.    Ms. Koosha was emotionally harmed by the hostile and abusive atmosphere imposed upon her as well as Eaton's failure to respond thereto.  Ms. Koosha was also physically harmed by this hostile environment as she endured a life-threatening heart attack.

258.    By reason of Defendants' conduct as alleged herein, Plaintiff Koosha is entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

## COUNT XX
### (INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)

### VIOLATION OF N.J. STAT. § 10, subd. 5-12
### SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
### (All Defendants)

259.    Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

260.    Managers Vincenzi, Ferrang, and Quade's severe and pervasive sexually-charged conduct cumulatively created an abusive and hostile work environment that altered the terms and conditions of Ms. Koosha's employment.

261.    Eaton failed to take any action in response to Ms. Koosha's and other female employees' complaints about Managers Vincenzi, Ferrang, and Quade's conduct.  Eaton did not thoroughly investigate these complaints, take any remedial or corrective measures, or otherwise step in to prevent further occurrences.

262.    Ms. Koosha was emotionally harmed by the hostile and abusive atmosphere imposed upon her as well as the failure of Eaton to respond thereto.  Ms. Koosha was also physically harmed by this hostile environment as she endured a life-threatening heart attack.

263.    By reason of the Defendants' conduct as alleged herein, Ms. Koosha is entitled to all remedies available for violations of N.J. Stat. § 10, subd. 5-12, including an award of punitive damages.

## COUNT XXI
## (INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)

### VIOLATION OF THE NEW YORK EQUAL PAY LAW–
### N.Y. LABOR LAW § 194
### DENIAL OF EQUAL PAY FOR EQUAL WORK
### (Against All Defendants)

264.    Plaintiff Koosha re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

265.    Defendants, employers of Plaintiff Koosha within the meaning of the New York Equal Pay Law, have discriminated against Plaintiff Koosha in violation of the New York Labor Law § 194, by subjecting her to unequal pay on the basis of sex.

266.    Defendants have discriminated against Plaintiff Koosha by treating her differently from and less preferably than similarly-situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.  Defendants so discriminated by subjecting her to discriminatory pay, discriminatory denials of bonuses and other compensation incentives, discriminatory denials of promotions and other advancement opportunities that would result in higher compensation, and other forms of discrimination in violation of the New York Equal Pay Law.

267.    Defendants caused, attempted to cause, contributed to, or caused the continuation of, the wage rate discrimination based on sex in violation of the New York Equal Pay Law. Moreover, Defendants willfully violated the New York Equal Pay Law by intentionally paying women less than men.

268.    As a result of Defendants' conduct alleged in this Complaint and/or Defendants' willful, knowing and intentional discrimination, Plaintiff Koosha has suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss, as

well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

269.   Plaintiff Koosha is therefore entitled to all legal and equitable remedies, including 25 percent compensatory awards and attorneys' fees and costs for all willful violations.

## COUNT XXII
### (INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)

### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-3 – RETALIATION
### (Against Defendant Eaton)

270.   Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

271.   Plaintiff Koosha regularly voiced her concerns regarding Eaton's discriminatory pay and promotion policies to the Company's managers, and filed a formal complaint with Human Resources regarding a male manager's discrimination and harassment.

272.   In retaliation for Ms. Koosha's complaints of gender discrimination, Eaton took adverse employment actions against her, including failing to provide her equal pay or promote her, excluding her from important sales meetings relating to her accounts, and making numerous baseless accusations about her performance and her professional relationships with customers. Eaton's managers ultimately bullied Ms. Koosha into resigning by subjecting her to escalating discrimination and harassment.

273.   Eaton's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff Koosha, entitling her to punitive damages.

274.   As a result of Eaton's conduct alleged herein, Plaintiff Koosha has suffered and continues to suffer harm, including but not limited to lost earnings, lost benefits, and other

financial loss, as well as humiliation, embarrassment, mental anguish, and emotional and physical distress, including a heart attack that she suffered due to work-related stress.

275.   By reason of Eaton's retaliation, Plaintiff Koosha is entitled to all remedies available for violations of Title VII, including an award of punitive damages.

276.   Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

## COUNT XXIII
## (INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)

### VIOLATION OF NEW YORK EXECUTIVE LAW § 296 – RETALIATION
### (Against All Defendants)

277.   Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

278.   Plaintiff Koosha regularly voiced her concerns regarding Eaton's discriminatory pay and promotion policies to the Company's managers, and filed a formal complaint with Human Resources regarding a male manager's discrimination and harassment.

279.   In retaliation for Ms. Koosha's complaints of gender discrimination, Eaton took adverse employment actions against her, including failing to provide her equal pay or promote her, excluding her from important sales meetings relating to her accounts, and making numerous baseless accusations about her performance and her professional relationships with customers. Eaton's managers ultimately bullied Ms. Koosha into resigning by subjecting her to escalating discrimination and harassment.

280.   By reason of Defendants' retaliation, Plaintiff is entitled to all remedies available for violations of the New York Executive Law.

## COUNT XXIV
### (INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)

**VIOLATION OF NEW YORK CITY ADMINISTRATIVE CODE § 8-107, subd. 7 –
RETALIATION
(Against All Defendants)**

281.    Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

282.    Throughout her employment with Eaton, Plaintiff Koosha repeatedly voiced concerns about Eaton's unfair compensation system, ultimately lodging a complaint with Human Resources regarding Defendants' gender discrimination and sexual harassment.

283.    In retaliation for Ms. Koosha's complaints regarding Defendants' unlawful employment practices, Defendants wrongfully terminated her.

284.    By reason of Defendants' retaliation, Plaintiff Koosha is entitled to all remedies available for violations of the New York City Administrative Code, including an award of punitive damages.

## COUNT XXV
### (INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)

**VIOLATION OF N.J. STAT. § 10, subd. 5-12 – RETALIATION
(All Defendants)**

285.    Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

286.    Plaintiff Koosha regularly voiced her concerns regarding Eaton's discriminatory pay and promotion policies to the Company's managers, and filed a formal complaint with Human Resources regarding a male manager's discrimination and harassment.

287.    In retaliation for Ms. Koosha's complaints of gender discrimination, Eaton took adverse employment actions against her, including failing to provide her equal pay or promote

her, excluding her from important sales meetings relating to her accounts, and making numerous baseless accusations about her performance and her professional relationships with customers. Eaton's managers ultimately pushed Ms. Koosha into resigning by subjecting her to escalating discrimination and harassment.

288.   By reason of Eaton's retaliation, Plaintiff Koosha is entitled to all remedies available for violations of the New Jersey Statute, including an award of punitive damages.

**COUNT XXVI**
**(INDIVIDUAL CLAIM -- PLAINTIFF KOOSHA)**

**VIOLATIONS OF THE EQUAL PAY ACT, 29 U.S.C. § 215(a)(3) -- RETALIATION**
**(All Defendants)**

289.   Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

290.   Plaintiff Koosha regularly voiced her concerns regarding Eaton's discriminatory pay and promotion policies to the Company's managers, and filed a formal complaint with Human Resources regarding a male manager's discrimination and harassment.

291.   In retaliation for Ms. Koosha's complaints of gender discrimination, Defendants took adverse employment actions against her, including failing to provide her equal pay or promote her, excluding her from important sales meetings relating to her accounts, and making numerous baseless accusations about her performance and her professional relationships with customers.   Defendants ultimately pushed Ms. Koosha into resigning by subjecting her to escalating discrimination and harassment.

292.   By reason of Defendants' conduct as alleged herein, Plaintiff Koosha is entitled to all remedies available under the Equal Pay Act, including doubled compensatory awards for all willful violations.

293.   Attorneys' fees should be awarded under 29 U.S.C. § 216, et seq.

**COUNT XXVII**
**(INDIVIDUAL CLAIM – PLAINTIFF KOOSHA)**

**VIOLATION OF THE NEW YORK EQUAL PAY LAW–**
**N.Y. LABOR LAW § 194 – RETALIATION**
**(Against All Defendants)**

294.   Plaintiff Koosha re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

295.   Plaintiff Koosha regularly voiced her concerns regarding Eaton's discriminatory pay and promotion policies to the Company's managers, and filed a formal complaint with Human Resources regarding a male manager's discrimination and harassment.

296.   In retaliation for Ms. Koosha's complaints of gender discrimination, Defendants took adverse employment actions against her, including failing to provide her equal pay or promote her, excluding her from important sales meetings relating to her accounts, and making numerous baseless accusations about her performance and her professional relationships with customers.   Defendants ultimately pushed Ms. Koosha into resigning by subjecting her to escalating discrimination and harassment.

297.   By reason of Defendants' conduct as alleged herein, Plaintiff Koosha is entitled to all remedies available under the New York Equal Pay Law.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs, on their own behalf and on behalf of the class members and collective action plaintiffs, pray that this Court:

A.   Certify the case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3), on behalf of the proposed Plaintiff class, and

designate Ms. Gaitane and Ms. Koosha as the representatives of this class and their counsel of record as class counsel;

B.     Designate this action as a collective action on behalf of the proposed EPA Collective Action Plaintiffs (asserting EPA claims) and

(i) promptly issue notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the EPA Collective Action Opt-In Class, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely EPA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b); and

(ii) toll the statute of limitations on the claims of all members of the EPA Collective Action Opt-In Class from the date the original complaint was filed until the Class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt-in as Plaintiffs;

C.     Designate Plaintiffs Gaitane and Koosha as representatives of the EPA Collective Action Opt-In Class;

D.     Declare and adjudge that Defendants' employment policies, practices and/or procedures challenged herein are illegal and in violation of the rights of Class Representatives and members of the class and collective action under Title VII of the Civil Rights Act of 1964, as amended, the Federal Equal Pay Act, the New York Equal Pay Law, the New York Executive Law, the New York City Administrative Code, and the New Jersey Law Against Discrimination.

E.     Issue a permanent injunction against Defendants and their partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives and any and

all persons acting in concert with them from engaging in any conduct violating the rights of Plaintiffs and class members, and those similarly situated as secured by 42 U.S.C. §§ 2000e *et seq.*, and order such injunctive relief as will prevent Defendants from continuing their discriminatory practices and protect others similarly situated;

     F.     Issue a permanent injunction against Defendants and their partners, officers, trustees, owners, employees, agents, attorneys, successors, assigns, representatives and any and all persons acting in concert with them from engaging in any further unlawful practices, policies, customs, usages, gender discrimination or retaliation by the Defendants as set forth herein;

     G.     Order Eaton to initiate and implement programs that will: (i) provide equal employment opportunities for female sales employees; (ii) remedy the effects of the Defendants' past and present unlawful employment policies, practices and/or procedures; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

     H.     Order Eaton to initiate and implement systems of assigning, training, transferring, compensating and promoting female sales employees in a non-discriminatory manner;

     I.     Order Eaton to establish a task force on equality and fairness to determine the effectiveness of the programs described in G through H above, which would provide for: (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity; (ii) the assurance that injunctive relief is properly implemented; and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in G through H above;

     J.     Order Eaton to adjust the wage rates and benefits for Plaintiffs, class members and collective action plaintiffs to the level that they would be enjoying but for the Defendants' discriminatory policies, practices and/or procedures;

K.      Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that Defendants have remedied the practices complained of herein and are determined to be in full compliance with the law;

L.      Award nominal, compensatory, liquidated and punitive damages to Plaintiffs, class members and collective action plaintiffs, in excess of 150 million dollars;

M.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Plaintiffs, class members and collective action plaintiffs;

N.      Award back pay, front pay, lost benefits, preferential rights to jobs and other damages for lost compensation and job benefits with pre-judgment and post-judgment interest suffered by Plaintiffs, class members and collective actions plaintiffs to be determined at trial;

O.      Order Defendants to make whole Plaintiffs, class members and collective action plaintiffs by providing them with appropriate lost earnings and benefits, and other affirmative relief;

P.      Award any other appropriate equitable relief to Plaintiffs, class members, and collective action plaintiffs; and

Q.      Award any additional and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable of right by jury.

Dated: April 5, 2011

Respectfully submitted,

Steven L. Wittels (SLW-8110)
Jeremy Heisler (JH-0145)
Deepika Bains (DB-4935)
Siham Nurhussein (SN-9379)
SANFORD WITTELS & HEISLER, LLP
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 723-2947
Facsimile: (646) 723-2948
swittels@swhlegal.com

Janette Wipper (CA Bar No. 275264)
SANFORD WITTELS & HEISLER, LLP
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 391-6900
Facsimile: (415) 421-4784
jwipper@swhlegal.com

*Counsel for Plaintiffs Amy Gaitane, Mahasti Koosha, and the Class and Collective Action Plaintiffs*